[Civ. No. 31594.  Second Dist., Div. Three.  Oct. 4, 1968.]

LESLIE J. OWENS CONSTRUCTION CORP., Plaintiff and Appellant, v. CAMEO PARK et al., Defendants and Respondents.

Ardy V. Barton for Plaintiff and Appellant.

Cavalletto, Webster, Mullen & McCaughey, Hugh J. Hafer-kamp and J. B. Hudgens for Defendants and Respondents.

SHINN, J.*—This is an action to foreclose a mechanic's lien of $11,845.23 for excavation and grading. The court made findings to the effect that plaintiff contracted to do certain work for $9,000; the work for which plaintiff seeks compensation was a part of the work to be done for that price; plaintiff had been paid $9,000 and that defendants owe plaintiff nothing. Judgment was for defendants and plaintiff appealed.

Plaintiff is a corporation managed by Leslie J. Owens. Cameo Park is a partnership having as its general partners Robert S. Harvey and United Western Lands, Inc.; United Western Lands, Inc., is a corporation; C. Fred Smith is its president. Cameo owned tract 10260, a subdivision of 79 lots in Santa Barbara County. Under contract dated March 21, 1963, Owens Corporation graded the tract, as far as it was staked for grading, for a price of approximately $15,000, which was paid.

It became necessary to raise the proposed level of Patterson Avenue adjacent to the tract, to do certain other excavating and grading work, and a new grading plan was prepared by Holmes, then the engineer for Cameo, which indicated some excavation to be done and the change of levels of practically all the lots. This plan was submitted to plaintiff; Del Sare, then connected with plaintiff, examined the plan, consulted with Holmes, and submitted a bid to United Western, the general contractor, as set out below.[1] The bid was accepted by United.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1] "Sub: PROPOSAL FOR EXTRA WORK
　　　TRACT #10,260
Atten: Mr. C. Fred Smith
Gentlemen:
　Reference is made to our proposal and contract dated March 21, 1963,

The changes of grades of Patterson and Poinsetta Avenues and the Cathedral area mentioned in the bid will be referred to as the change of grade of Patterson avenue. By its bid Owens offered to do the work "required by this change in grades on the basis of the 'Extra Work' provision in our contract dated March 21, 1963," with a ceiling of $9,000.

The determinative issue was stated in the joint pretrial statement as follows: "D. Was there a meeting of the minds of the parties to the writing of July 24, 1963, as to the portion

wherein a provision provides for extra work due to alteration or deviation from the grading plan, the bid sheet, and job stakes established for rough grading. Excavation operations were carried out to the extent of the job staking during the recent months of March through April and operations were suspended due to lack of complete staking in the vicinity of Patterson Ave. At time of work suspension this contractor barricaded the cut adjacent to Patterson Ave. for public safety and removed his equipment from the premises.

The 'bid' grading plan has now been changed by the Engineer to accommodate the County requirements for Patterson Ave. and Poinsetta Ave., and the adjustment of lot and street grade in the southern region of the tract to permit the deletion of the retaining wall along projected Cathedral Oaks Road.

We propose to accomplish the excavation work required by this change in grades on the basis of the "Extra Work" provision in our contract dated March 21, 1963, with a contract modification that the total sum of this extra work will not exceed nine thousand dollars, ($9,000.00).

This proposal for the extra excavation work includes all items of costs for move-in and move-out, labor, materials, supply, equipment, tools and implements required to do the excavation and filling work as indicated in the plan change.

For the purpose of equipment costs the following rates on an operated and maintained basis will be applied:

EQUIPMENT ITEM:

| | | |
|---|---|---|
| DW-21 Motor Scraper | @ | $24.50 ea. per hr. operated |
| DW-20 ″ ″ | @ | 24.50 ″ ″ ″ ″ |
| D-8/Dozer & Hydraulic Rippers | @ | 22.50 ″ ″ ″ ″ |
| D-8/Dozer | @ | 20.00 ″ ″ ″ ″ |
| Cat 12 Motor Patrol | @ | 14.50 ″ ″ ″ ″ |
| 5x5 Sheepfoot | @ | 5.00 ″ ″ ″ ″ |
| 2500 Gal. Water Truck | @ | 12.50 ″ ″ ″ ″ |
| 4000 ″ ″ ″ | @ | 14.00 ″ ″ ″ ″ |

For field labor other than equipment operation the following rates will be applied.

LABOR:

Foreman, @....$6.68 per hour  8 hr. da.
Grade Checker and/or operator @....$6.28
per hour, 8 hr. da.
Laborer, @....$4.28 per hour, 8 hr. da.

All other costs to be on basis of invoices, such as move-in- move-out, hauling out and disposing of debris, etc., that may accrue from additional clearing work.

This proposal is for the above described changes in excavation and filling work and such clearing required to do the excavation work only."

or portions of the subdivision that each party intended to be covered by the writing, in that plaintiff contends that the writing was intended to cover only the areas along Patterson Avenue and Cathedral Oaks Road, and defendants contend that the writing was intended to cover the entire subdivision?''

Material findings were the following:

## IX

"The extent of performance promised by plaintiff in the July 24, 1963 agreement cannot be determined from the face of the contract itself because the performance promised is to do the grading work which would effect the change in tract grading intended to result from carrying out the revised grading plan. Both the original and the revised grading plans (Plaintiff's Exhibit 3 and Defendants' Exhibit 1) are incorporated in and made a part of this finding since reference must be made to them for interpretation of the July 24, 1963 agreement.

## X

"The language of the July 24 agreement, properly interpreted in the light of the extrinsic evidence, required plaintiff to perform all changes in grades dictated by the revised grading plan and there was an objective meeting of the minds of plaintiff and Cameo Park on the terms of the offer and acceptance. Thus, the July 24 contract required performance by the plaintiff of all of the work in controversy in this case.

## XI

"Subjectively, plaintiff honestly but erroneously considered that the language of the July 24 proposal required plaintiff to perform the changes dictated by the revised grading plan only in a restricted area of lesser geographical extent than the entire tract.

## XII

"Plaintiff did not communicate its subjective restricted conception of the language of the July 24 proposal to any of the defendants at any time before the acceptance of plaintiff's proposal.

## XIII

"Defendants subjectively and honestly considered that the language of the July 24 proposal required plaintiff to perform all changes in grades dictated by the revised grading plan.''

■ The court found that the amount of work which Owens offered to do could not be determined from the face of the contract. This was a correct finding since the bid was silent as to the amount of grading that was "required by this change in grades" of Patterson Avenue. This was the decisive factual question in the case unless the court determined, upon sufficient evidence, that plaintiff agreed to do all the work shown on the grading plan for $9,000.

The court then looked to the extrinsic evidence for assistance in ascertaining the intentions and understandings of the parties as to the meaning of the contract.

Through its esoteric approach by way of the subjective concepts of the parties as to the meaning of the contract, the court found that plaintiff understood it was offering to grade only a restricted area while the defendants understood Owens was obligated to grade all the lots for which grading was indicated on the plan for $9,000. It will appear from the discussion which follows that this misunderstanding persisted up to and throughout the trial.

Notwithstanding the admitted disagreement as to the extent of Owens' obligation the court found (No. X) that the parties agreed that Owens had obligated itself by the contract to grade all lots to conform the revised grading plan for $9,000.

Thus the judgment has no support in the court's interpretation of the contract, as written, but depends entirely upon the finding that the parties understood it to mean that Owens was to grade all the lots to levels indicated on the plan for $9,000.

There was no support whatever in the evidence for the finding that the parties reached an agreement as to the true meaning of the writing.

After conferring with Holmes as to the work that would be required, Sare formed the opinion that excavation and filling would be required on only 30 lots in the general vicinity of Patterson Avenue, and he fixed the ceiling price of $9,000. Aside from Sare's conference with Holmes, the details of which were not disclosed, no other representative of United was informed of Sare's opinion as to the amount of work plaintiff offered to do for $9,000.

Owens proceeded with excavation and regrading of the 30 lots in the general vicinity of Patterson Avenue, furnishing daily invoices of the work done, and was paid $9,000. Owens then started work on the remaining 49 lots. At this time a

dispute arose whether Owens had completed its contract. Mr. Owens insisted that his corporation had done everything it had agreed to do and that any more work would be done as extra work under the March 21 contract, as stated in the bid. McKee, United's superintendent, and Smith, its president, insisted that Owens was bound by its contract to grade all the lots in the tract according to the plan. United wanted all the lots graded; Owens wanted to grade them, but only on an extra work basis. Each side was adamant in its position, no agreement was reached and Owens proceeded to move some 42,000 yards in grading the 49 lots. Its invoices for this work totaled $11,845.23, the amount of the mechanic's lien sought to be foreclosed herein.

The finding that the parties agreed upon the meaning of the contract is contrary to the uncontradicted testimony that they were in complete and uncompromising disagreement.

Since the finding that the parties agreed Owens was to grade all the lots was without support in the evidence it furnishes no support for the judgment.

Our study of the findings discloses no other finding that would provide a basis for the judgment.

Owens limited its offer to the work ''required by this change in grades.'' When effect is given to these words it was a factual question how much work was thus required. This would be an engineering question. Grading had to be done which would meet the requirements of the county. Such requirements would be read into the contract. Since no method was provided in the contract for determining how much grading was required by the change in grades, good engineering practice controls as to the amount of work that must be done.

In their concern and disagreement regarding the meaning of the contract the parties did not deem it necessary to produce evidence as to the extent of the grading that was required by the change in the grade of Patterson Avenue, a matter to be referred to later in our opinion.

Mr. Holmes testified for plaintiff that in his opinion it was not necessary under the new plan, which he had prepared, to regrade all the lots in the tract, but he did not express an opinion as to which, if any, of the 49 lots he thought required regrading and which lots did not. McKee, who was superintendent for United Western, called by defendants, testified on cross-examination that he did not make the map and was not

prepared to say whether each and every pad required change in elevation, but on further cross-examination it was erroneously understood he had testified that in his opinion it was necessary to change the elevation of all the lots in the tract because of the change in the elevation of the pipeline in Patterson Avenue. Mr. McKee was not a licensed engineer or architect and it was not shown that he had any duties of an engineering nature, or that he had made a study of the problem. The briefs do not call attention to any evidence, other than the above, relevant to this question and our examination of the record disclosed none. There was no substantial evidence as to which, if any, of 49 lots were to be graded for $9,000.

Since it was error to find upon the evidence then before the court that Owens agreed to grade all the lots for $9,000 it was imperative that the court determine whether Owens did grading that was not included in the bid of $9,000 and if so, the extent and value of that work.

In a communication by letter at the request of the court the respondents argue that ''the trial judge's finding that the language of the agreement did require plaintiff to perform all changes in grades certainly would constitute an implied holding that all of the changes were 'necessary.' '' Grading of all lots upon which grading was indicated upon the plan would have been necessary if Owens had agreed to grade them all, but upon that theory it would be immaterial how many lots were required to be graded by the changes in grades due to the change in the grade of Patterson Avenue.

The court did not make or intend to make a finding as to the extent of grading that would be required by the change in grades, and in the absence of evidence as to that fact the court could not have made a determination of that engineering problem.

Although the court determined as a fact that Owens has been paid in full for all work performed, that determination was based solely upon the unsupported and erroneous finding that Owens agreed to do all the work for $9,000.

In view of our conclusion that there was no support in the evidence for the finding that the parties agreed that the contract required Owens to grade all the lots and our conclusion that the court was in error in its interpretation of the contract, in the light of the extrinsic evidence, there is no finding which provides support for the judgment.

The judgment must be reversed for want of findings having support in the evidence sufficient to support the judgment.

In a supplemental brief and in a letter submitted at the court's request, appellant asserts that it did not have the burden of proving how much of the grading upon the 49 lots was not required by the change in grades. Respondents, in their letter, disagreed with this contention. In the trial no question arose and the court did not rule as to which party had the burden of proof. This will be a question for the trial court if the case is retried, but in view of our reversal of the judgment, it is not a question which calls for an expression of our views.

In its brief appellant does not seek a reversal of the judgment as it applies to C. Fred Smith.

The judgment as to defendant Smith is affirmed; in all other respects it is reversed.

Ford, P. J., and Cobey, J., concurred.

A petition for a rehearing was denied October 29, 1968.